1

2                    UNITED STATES DISTRICT COURT

3              FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                           OAKLAND DIVISION

5

6   ONE TRUE VINE, LLC, a California limited        Case No:  C 10-04102 SBA
    liability company,
                                                    **ORDER GRANTING**
7                    Plaintiff,                     **DEFENDANT'S MOTION TO**
                                                    **DISMISS**
8          vs.
                                                    Docket 17
9   LIQUID BRANDS LLC, a Massachusetts
    limited liability company; and DOES 1
10  through 50 inclusive,

11                   Defendants.

12

13         On September 13, 2010, Plaintiff One True Vine, LLC ("Plaintiff" or "One True

14  Vine") filed suit in this Court against Liquid Brands LLC ("Defendant" or "Liquid

15  Brands") alleging claims for trade dress infringement and false designation of origin under

16  § 43 of the Lanham Act, and false advertising under the Lanham Act and state law.  The

17  parties are presently before the Court on Defendant's motion to dismiss for lack of personal

18  jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  Dkt. 17.  Having read

19  and considered the papers filed in connection with this matter and being fully informed, the

20  Court hereby GRANTS the motion for the reasons set forth below.  The Court, in its

21  discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ.

22  P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

23  **I.     BACKGROUND**

24         A.     FACTUAL SUMMARY

25         Plaintiff is a limited liability company organized under California law which has its

26  principal place of business in St. Helena, California.  Compl. ¶ 1, Dkt. 1.  Plaintiff operates

27  multiple wineries at various locations, including Napa Valley, California, and sells its

28  wines, inter alia, under the "Layer Cake" brand.  Radomski Decl. ¶¶ 2-3, Dkt. 28; Compl.

¶ 10.  Since 2006, Plaintiff allegedly has used "a unique and distinctive label for its Layer Cake wines."  Radomski Decl. ¶ 4.  Plaintiff avers that Liquid Brands recently began selling wine under the "Cigar Box" brand using a label and wine bottle that purportedly look "almost identical" to the label and bottle Plaintiff uses for its Layer Cake wines. Compl. ¶ 12.[1]

Defendant Liquid Brands is owned by Greg Crone and his wife.  Crone Decl. ¶ 1, Dkt. 7-1.  Mr. Crone is the company's President and its only employee.  Id. ¶ 3.  He operates Liquid Brands exclusively out of his home in Scituate, Massachusetts, a small town near Boston.  Id.  He has no offices or employees located in California or anywhere else.  Id. ¶ 8.  All wines sold by Defendant are bottled and labeled overseas and are imported into the United States under the Cigar Box brand.  Id. ¶ 6.  The label for Cigar Box wines was designed in 2009 by a label designer in New Zealand.  Id. ¶ 7.  The label, which is affixed to a generic Bordeaux-style wine bottle, displays the Cigar Box mark above an image of an open cigar box.  Id. ¶ 8 and Ex. 1.

Defendant does not knowingly sell its wines in California or through the internet. Id. ¶ 5.  Rather, Defendant sells his wine only to the three licensed wholesale distributors: M.S. Walker in Massachusetts; Lieber Brothers, Inc., in New York; and Worldwide Wines in Connecticut.  Second Crone Decl. ¶ 4c, Dkt. 35-1.  Mr. Crone does not control to whom these distributors sell his Cigar Box wines.  Id. ¶ 4d.  He also is not aware of any of these distributors having sold Cigar Box wines in California.  Reidl Decl. Ex. A at 16:12-23, Dkt. 47.  However, prior to launching the Cigar Box brand, Mr. Crone contacted Dan Grunbeck, a former colleague who was working for Young's Market, and may have sent samples to

---

[1] The Complaint fails to include exemplars of the labels or bottles at issue. However, based on the images provided by Defendant, it is readily apparent that the labels are noticeably different.  See Crone Decl. Ex. 1.  Both labels are affixed to what appears to be a standard wine bottle.  The Layer Cake label displays a cake (with a slice removed) sitting on a cake stand, while the Cigar Box label depicts an open cigar box.  Id.  In addition, each label utilizes different fonts.  Id.  Given these obvious dissimilarities, it is unclear how a reasonable consumer would confuse Defendant's Cigar Box wine with Plaintiff's Layer Cake wine.  Nevertheless, since the Court lacks personal jurisdiction over the Defendant, the Court need not venture into the merits of Plaintiff's claims.

1   him to see if Young's Market was interested in distributing his wine in California.  Chapin

2   Decl. Ex. A at 35:2-36-21, Dkt. 45.  Mr. Grunbeck said that Young's Market was not

3   interested.  Id. at 36:21-37:2.

4       B.    PROCEDURAL HISTORY

5       On September 13, 2010, Plaintiff filed the instant action against Defendant alleging

6   five claims for relief:  (1) trade dress infringement under § 43(a) of the Lanham Act;

7   (2) false designation of origin under § 43(a) the Lanham Act; (3) false advertising under

8   § 43(a) the Lanham Act; (4) false advertising under California Business and Professions

9   Code § 17500; and (5) and unfair competition under California Business and Professions

10  Code § 17200.  Plaintiff seeks damages, injunctive relief, an accounting, restitution and

11  recovery of attorneys' fees and costs.

12      In response to the Complaint, Defendant filed a motion to dismiss for lack of

13  personal jurisdiction.  Dkt. 17.  In its motion, Defendant claims that it does not conduct any

14  business and does not sell its wines in California, and therefore, there is no basis for the

15  Court to assert general or specific personal jurisdiction over it.  Plaintiff, in turn, filed a

16  motion for jurisdictional discovery, which the Court referred to a Magistrate Judge for

17  determination.  Dkt. 18, 23.

18      On February 11, 2011, Magistrate Judge James Larson issued an order partially

19  granting Plaintiff's motion.  Dkt. 42.[2]  In particular, he granted Plaintiff leave to conduct a

20  Rule 30(b)(6) deposition of Defendant regarding its existing sales and distribution of its

21  wine in California.  Magistrate Judge Larson further permitted Plaintiff to serve document

22  requests in connection with the deposition.  The Court continued the hearing on

23  Defendant's motion to dismiss to May 24, 2011, in order to allow Plaintiff the opportunity

24  to include information obtained through discovery with its opposition.  Dkt. 41.  Plaintiff

25  deposed Mr. Crone on March 15, 2011.  Chapin Decl. ¶ 2, Dkt. 45.  Plaintiff filed its

26

27

28      [2] Neither party objected to the Magistrate Judge's ruling.

revised opposition on May 3, 2011, and Defendant filed its reply on May 10, 2011.  Dkt. 44, 46.

## II.     LEGAL STANDARD

District courts have the authority to dismiss an action for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "Where, as here, the existence of personal jurisdiction is challenged and the defendant appears specially to contest its presence in the jurisdiction, the plaintiff has the burden to come forward with some evidence to establish jurisdiction."  Dist. Council No. 16 of Int'l Union of Painters & Allied Trades v. B & B Glass, Inc., 510 F.3d 851, 855 (9th Cir. 2007).  "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues."  See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).  "When a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  Id. (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)).  The Court accepts as true any uncontroverted allegations in the complaint and resolves any conflicts between the facts contained in the parties' evidence in the plaintiff's favor. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002).  However, for personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."  Alexander v. Circus Circus Enters., Inc., 972 F.2d 261, 262 (9th Cir. 1992) (internal quotations omitted).

## III.    DISCUSSION

### A.     OVERVIEW

Personal jurisdiction over a nonresident defendant is analyzed under a two-step analysis.  Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994).  First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute.  Id.  Second, the exercise of jurisdiction must comport with federal due process.  Id. at 1404-05.  Because "California's long-arm permits the exercise of jurisdiction to the limits of due process," the Court's analysis of personal jurisdiction need only consider

"whether the exercise of jurisdiction over [the defendant] comports with due process." Glencore, 284 F.3d at 1123. Constitutional due process requires that a defendant have sufficient "minimum contacts" with the forum state. Int'l Shoe Corp. v. Washington, 326 U.S. 310, 316 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The minimum contacts must be such that a defendant "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Under a minimum contacts analysis, jurisdiction may either be "specific" or "general." Doe, 248 F.3d at 923. Specific jurisdiction exists "where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." Glencore, 284 F.3d at 1123. In contrast, general jurisdiction depends on the defendant's "substantial, continuous and systematic" contacts with the forum, "even if the suit concerns matter not arising out of his contacts with the forum." Id. Here, Plaintiff does not allege that general jurisdiction exists over Defendant. Therefore, the issue presented for resolution is whether Plaintiff has met its burden of presenting a prima facie case of specific jurisdiction.

### B.   SPECIFIC JURISDICTION

The existence of specific jurisdiction is directly dependent on whether the claims at issue arise from the defendant's forum-related contacts. Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993). The Ninth Circuit applies a three-prong test for analyzing whether specific jurisdiction is present:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

1   Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th

2   Cir. 2006) (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir.

3   2004)).  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then

4   shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would

5   not be reasonable."  Schwarzenegger, 374 F.3d at 802 (citing Burger King, 471 U.S. at 476-

6   78).  Of the three prongs, the first "is the most critical."  Cybersell, Inc. v. Cybersell, Inc.,

7   130 F.3d 414, 416 (9th Cir. 1997).

8                     **1.      Purposeful Availment**

9          The Ninth Circuit uses "the phrase 'purposeful availment,' in shorthand fashion, to

10  include both purposeful availment and purposeful direction, … but availment and direction

11  are, in fact, two distinct concepts."  Schwarzenegger, 374 F.3d at 802.[3]  "A purposeful

12  availment analysis is most often used in suits sounding in contract [while] [a] purposeful

13  direction analysis, on the other hand, is most often used in suits sounding in tort."  Id.

14  "A showing that a defendant purposefully availed himself of the privilege of doing business

15  in a forum state typically consists of evidence of the defendant's actions in the forum, such

16  as executing or performing a contract there."  Id.  In contrast, "[a] showing that a defendant

17  purposefully directed his conduct toward a forum state, by contrast, usually consists of

18  evidence of the defendant's actions outside the forum state that are directed at the forum,

19  such as the distribution in the forum state of goods originating elsewhere."  Id.

20         Trademark and false advertising claims are akin to tort claims, and therefore, are

21  analyzed under the purposeful direction test.  See Panavision, 141 F.3d at 1320-21

22  (applying purposeful direction test in trademark dilution action).  The purposeful direction

23  test "requires that the defendant allegedly have (1) committed an intentional act,

24  (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely

25  to be suffered in the forum state."  Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th

26

27         [3] The purposeful direction test also is referred to as the "Calder effects" test, derived
    from Calder v. Jones, 465 U.S. 783 (1984).  See Panavision Int'l, L.P. v. Toeppen, 141 F.3d
28  1316, 1320-21 (9th Cir. 1998).

1  Cir. 2002).  To meet the "expressly aimed" requirement, the plaintiff must demonstrate that

2  the intentional acts were directed specifically at the forum in which the plaintiff resides.

3  See Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1130-31 (express

4  aiming requirement met where defendant law firm knew of plaintiff's existence, targeted

5  plaintiff's business, and entered into direct competition with plaintiff by copying content

6  from plaintiff's website to lure its clients).  At the same time, the infringement of a

7  plaintiff's intellectual property rights with knowledge that plaintiff's operations are based

8  in the forum and that the harm will be felt there, is insufficient to establish personal

9  jurisdiction without a further showing that the defendant otherwise expressly aimed its

10  activities at the forum.  E.g., Love v. Associated Newspapers, Ltd., 611 F.3d 601, 609 (9th

11  Cir. 2010) ("Where a defendant's 'express aim was local,' the fact that it caused harm to

12  the plaintiff in the forum state, even if the defendant knew that the plaintiff lived in the

13  forum state, is insufficient to satisfy the effects test."); Schwarzenegger, 374 F.3d at 807

14  (advertisement using a California celebrity's likeness was not expressly aimed at California

15  where the advertisement targeted Ohio customers, notwithstanding defendant's awareness

16  that plaintiff resided and caused him harm in California); Pebble Beach Co. v. Caddy, 453

17  F.3d 1151, 1158 (9th Cir. 2006) (British company's use of "Pebble Beach" trademark did

18  not constitute "express aiming" at California, despite the defendant's knowledge that the

19  Pebble Beach resort was in California).

20  ### a)   Expressly Aimed

21      Here, the parties dispute whether Defendant's acts were expressly aimed at

22  California.[4]  Plaintiff argues that Defendant "expressly aimed its activities at this forum by

23  soliciting business in California (e.g., by sending samples to a distributor) and by making

24  its wines available for purchase California residents."  Pl.'s Opp'n at 13, Dkt. 44.  The

25  record does not support Plaintiff's assertion.  During his deposition, Mr. Crone testified that

26  prior to launching the Cigar Box brand, he contacted Mr. Grunbeck to determine whether

27  —————————

28      [4] Defendant concedes that the intentional act prong of the purposeful direction test is
satisfied.  Def.'s Mot. at 9.

1   Young's Market might be interested in distributing his wine in California.  Chapin Decl.

2   Ex. A at 35:2-36-21.  In the course of those contacts, Crone recalls that he may have sent

3   some samples of his wine to Mr. Grunbeck.  Id. at 50:5-7.  However, Mr. Grunbeck

4   responded that Young's Market was not interested in selling Defendant's wine.  Id. at 39:4-

5   14.  The Court is unaware of any authority—and Plaintiff has failed to cite any—for the

6   proposition that sending samples of a product to a prospective distributor is sufficient to

7   meet the express aiming requirement.  To the contrary, the Ninth Circuit has held that

8   contacting persons within the forum is an inadequate basis for personal jurisdiction where

9   those contacts did not enable the particular activities giving rise to the lawsuit.  See Love,

10  611 F.3d at 609.

11          Equally unavailing is Plaintiff's ancillary contention that Defendant targeted

12  California by allegedly "sell[ing] its wines to at least three distributors"—namely, BevMax,

13  Long Island Wine & Spirits Merchants ("Long Island Merchants") and Andover Liquors—

14  which, in turn, "[made] Defendant's Cigar Box wine available for purchase and delivery to

15  California through the Internet."  Pl.'s Opp'n at 6, 13.  As support, Plaintiff proffers the

16  declaration of one of its attorneys in this action, Natalie Gowin, who states that after

17  Defendant filed its motion to dismiss, she personally ordered two bottles of Cigar Box wine

18  from internet sites operated by BevMax and Long Island Merchants, and then had those

19  bottles delivered to her office in Palo Alto, California.  Gowin Decl. ¶¶ 2-5, 7, 8, Dkt. 30.

20  Ms. Gowin also ordered a bottle of Cigar Box wine from Andover Liquors, but apparently

21  did not complete the purchase or have the bottle shipped.  Id. ¶ 6.  Plaintiff also presents the

22  declaration of John Hardesty, who attests to having ordered three bottles of Defendant's

23  Cigar Box wine through these retailers and receiving them at an address in St. Helena,

24  California.  Hardesty Decl. ¶¶ 2-3, Dkt. 29.

25          The fact that Plaintiff was able to purchase several bottles of Cigar Box wines from

26  internet retailers which then were delivered to locations in California does not show that

27  Defendant expressly aimed its conduct at this forum.  The record confirms that Defendant

28  was unaware that Plaintiff was located in or that Cigar Box wines could be purchased over

1   the internet and delivered within California.[5]  Crone Decl. ¶ 11; Reidl Decl. at 31:17-19.

2   And despite Plaintiff's assertions to the contrary, there also is no evidence that Defendant

3   had any distribution relationship with these retailers or that it supplied or knew that these

4   internet retailers stocked its wine.  While it is possible that these retailers acquired Cigar

5   Box wine from one of the three distributors with which Defendant actually had a

6   distribution relationship, that possibility does not satisfy the express aiming requirement.

7   See Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 459-460 (9th Cir. 2007)

8   ("The placement of a product into the stream of commerce, without more, is not an act

9   purposefully directed toward a forum state") (citing Asahi Metal Indus. Co., Ltd. v. Super.

10  Ct. of California, 480 U.S. 102, 112 (1987)); Brand v. Menlove Dodge, 796 F.2d 1070,

11  1074-75 (9th Cir. 1986) ("Because [defendant] did not engage in affirmative conduct to

12  deliver its product to California, but rather passively made a sale it allegedly knew would

13  affect that state, we conclude that [defendant] did not direct its activities purposefully at

14  California so as to create a presumption of reasonableness of jurisdiction in the California

15  courts.").[6]

16      Plaintiff cites two out-of-circuit cases for the proposition that *any* sale of a product

17  in the forum is sufficient to obtain personal jurisdiction over a defendant.  Pl.'s Opp'n at

18  10.  Aside from being non-binding authority, both cases are readily distinguishable.  In

19  Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623 (11th Cir. 1996), the defendant's

20

21      [5] In fact, there is no evidence that the sales of Cigar Box wine by BevMax, Long
    Island Merchants or Andover Liquors were intended specifically for the California market,
    as opposed to any other state.

22

23      [6] Plaintiff asserts that Defendant's lack of control over its distributors does not
    insulate it from being subject to the personal jurisdiction of this Court.  Pl.'s Opp'n at 12.
    The authority cited by Plaintiff, however, is inapposite.  In Alcohol Monitoring Systems,

24  Inc. v. Actsoft, Inc., 682 F. Supp. 2d 1237, 1247 (D. Colo. 2010), the district court
    concluded that the defendant had constructive knowledge that its products were being

25  distributed in the forum where the defendant and distributor were "owned and controlled by
    the same individuals," which is not the case here.  In Barone v. Rich Bros. Interstate

26  Display Fireworks Co., 25 F.3d 610, 615 (8th Cir. 1994), the court held that defendant's
    use of "regional distributors throughout the country" was sufficient to subject it to the

27  jurisdiction of neighboring states.  There is no evidence that Liquid Brands utilized regional
    distributors throughout the country.  In addition, Barone appears to be at odds with the

28  controlling Ninth Circuit authority discussed above.

1   Canadian sales representative admitted to sending promotional materials to prospective

2   customers in Florida, and personally travelled to Florida on a number of occasions to give

3   product presentations.  Based on this conduct, the Eleventh Circuit held that "[the

4   representative's] marketing efforts, viewed collectively, qualify as a general course of

5   business activity in Florida for pecuniary benefit."  Id. at 628.  In this case, there is no

6   evidence that Defendant solicited customers in California or travelled to California to

7   market its wines.  Thus, unlike Sculptchair, there is no nexus between the defendant's

8   actions and the sale of its product in the forum.

9          Plaintiff's citation to Nida Corp. v. Nida, 118 F. Supp. 2d 1223, 1231-32 (M.D. Fla.

10   2000) fares no better.  In that case, a Florida district court asserted personal jurisdiction

11   over a California resident who had made sizeable sales of its products directly to Florida

12   customers.  Here, there is no evidence of any sales made by Defendant to any California

13   customers.  The five bottles of Cigar Box wine purchased by Plaintiff were made through

14   third-party retailers which were not supplied by Defendant.

15          Next, Plaintiff attempts to make much of a single email sent by Mr. Crone which

16   supposedly proves his intention of entering the California market.  Specifically, in an email

17   dated August 10, 2010, Mr. Crone responded to an email inquiry from Mike Davis (who

18   later was revealed to be a friend of Chris Radonski, One True Vine's President) regarding

19   the availability of Cigar Box wines in San Diego, California.  Radomski Decl. Ex. A; Pl.'s

20   Opp'n at 3, 7, 10.[7]  In response to Mr. Davis' email, Mr. Crone stated:  "We are opening

21   the California Market in November.  Can you wait that long?  Please go to the Liquid

22   Brands facebook page … and 'friend' the page.  We will notify you the moment we get San

23   Diego distribution."  Radomski Decl. Ex. A.

24          Plaintiff seizes upon the apparent inconsistency between Mr. Crone's claim in the

25   email about "opening" the California market, and the statement in his declaration wherein

26

27          [7] Plaintiff's opposition somewhat misleadingly characterizes Mr. David as a
"potential customer."  Pl.'s Opp'n at 3.  But in his declaration, Mr. Radomski states that
28   Mr. Davis "is a friend of [his]."  Radomski Decl. ¶¶ 1, 7.

1    he states that he has "no intention of selling … CIGAR BOX wines in California." <u>See</u>

2    Crone Decl. ¶ 8.[8]  The import of any apparent inconsistencies with respect to Defendant's

3    intention to sell its wines in the California market is unclear.  The salient question is

4    whether Defendant engaged in intentional conduct expressly aimed at the forum.  Here,

5    even if Mr. Crone had at one point hoped to enter the California market, the fact remains

6    that there is no evidence that he ever did so.  As for the purchases of Defendant's wine

7    made by Plaintiff from on-line retailers following the commencement of this action, there is

8    no evidence that Defendant directly supplied the wine sold by those retailers.  In any event,

9    the Court is not otherwise persuaded by Plaintiff's dubious evidence.  <u>See</u> <u>Clarus</u>

10   <u>Transphase Scientific, Inc. v. Q-Ray, Inc.</u>, No. C 06-3450, 2006 WL 2374738 at *3 n.3

11   (N.D. Cal. Aug 16, 2006) ("A plaintiff cannot manufacture personal jurisdiction in a

12   trademark case by purchasing the accused product in the forum state.").[9]  The Court thus

13   concludes that Plaintiff has failed to carry its burden of establishing that Defendant engaged

14   in conduct expressly aimed at California.

15                    ***b)      Foreseeabilty***

16          "The final element requires that [defendant]'s conduct caused harm that it knew was

17   likely to be suffered in the forum." <u>Brayton Purcell</u>, 606 F.3d at 1131.  The record shows

18   that Mr. Crone was unaware that Plaintiff resided in California until he received an angry

19   call from Jason Woodbridge, apparently the owner of One True Vine, accusing him of

20   copying the Layer Cake wine label and threatening to "bury [him] with litigation costs."

21   Crone Decl. ¶ 11.  Since Defendant did not know that Plaintiff was located in this forum, it

22

23
      _____

24          [8] During his deposition, Mr. Crone admitted to writing the email, but dismissed it as
      little more than "a flippant upbeat response to someone, trying to keep, you know, them on
25    the line as it were."  Chapin Decl. Ex. A at 56:4-11.

26          [9] Plaintiff also briefly argues that Defendant expressly aimed its activities at
      California by "copying Plaintiff's trade dress."  Pl.'s Opp'n at 14.  The Ninth Circuit has
27    held that copying alone is insufficient.   See Pebble Beach Co. v. Caddy, 453 F.3d at 1158.
      Plaintiff must also allege facts showing that the defendant specifically targeted the forum—
28    something that Plaintiff has failed to do.  See Brayton Purcell, 606 F.3d at 1130-31.

1   logically could not have known that the harm from any trade infringement or false

2   advertising would be suffered here.

3           Plaintiff counters that Defendant should have known that that its actions would have

4   an effect in California, ostensibly because "Plaintiff's Layer Cake brand is a popular wine,

5   and Defendant, a competing wine-maker, certainly knew or had reason to know of

6   Plaintiff," especially since "many wines" come from the Napa Valley.  Pl.'s Opp'n at 14-

7   15.  In addition, Plaintiff adds that Defendant's allegedly intentional copying of its Layer

8   Cake label further proves that it should have known about where Plaintiff is based.  <u>Id.</u>

9   These contentions are frivolous.  There is no evidence that Layer Cake is "popular," or at

10  least sufficiently so, such that a small one-person wine company located on the other side

11  of the country would have reason to know of its existence.  That "many wines" are

12  produced in Napa Valley does not support the inference that Defendant would be aware of

13  Plaintiff in particular.  Finally, Plaintiff contends that Defendant should have known of

14  Plaintiff's existence based on its having allegedly copied the Layer Cake label.  Pl.'s Opp'n

15  at 15.  No factual or legal support is offered by Plaintiff in support of this assertion.  In

16  addition, as discussed above, Plaintiff's contention that the labels are "practically identical"

17  strains credulity.

18                    **2.      Arising Out Of Forum-Related Activities**

19          Under the second prong of the tripartite test for specific personal jurisdiction, a

20  plaintiff's claim must arise "out of the defendant's forum-related activities."  <u>Panavision</u>

21  <u>Int'l, L.P.</u>, 141 F.3d at 1322.  Plaintiff must show that "but for" the defendant's forum-

22  related conduct, the injury would not have occurred.  <u>Myers v. Bennett Law Offices</u>, 238

23  F.3d 1068, 1075 (9th Cir. 2001).  The injury in a trademark or trade dress infringement case

24  is the damage to the trademark owner's reputation resulting from purchaser confusion.  <u>See</u>

25  <u>Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.</u>, 603 F.3d 1133, 1137 (9th Cir. 2010).

26          Plaintiff's arguments regarding the "arising out of" prong of the test for specific

27  jurisdiction are the same as those in support of purposeful availment; to wit, that Defendant

28  sent samples of its wine "to a California distributor, and … the sale of its Cigar Box wine to

California residents." Pl.'s Opp'n at 18. It is Plaintiff's burden to show that its claims would not have arisen *but for* Defendant's forum-related activity. In this instance, the alleged "distributor," Young's Market, declined to distribute Plaintiff's Cigar Box wine in California. But even if the act of sending those samples were relevant, there is no allegation or evidence that those samples bore the same label that Plaintiff now alleges is infringing. Accordingly, Plaintiff is hard-pressed to assert that its claim arises from sending those samples.

As for the "sales" of Defendant's wine, those purchases were by Plaintiff's attorney and an individual acting on Plaintiff's behalf. As noted, such evidence is of negligible value. See Clarus Transphase Scientific, 2006 WL 2374738 at *3 n.3. That aside, these purchases were made from on-line retailers to which Defendant did not sell or distribute its wine. Second Crone Decl. ¶ 4b-c. The mere fact that Plaintiff was able to purchase Defendant's Cigar Box wine on-line and then have it shipped to California does not constitute forum-related activity from which Plaintiff's claims arise.

### 3. Reasonableness

Where, as here, the plaintiff's showing is insufficient to establish either purposeful availment or that the claims arise from defendant's forum-related activities, "the Court need not reach the third prong of the specific jurisdiction test." Doe, 248 F.3d at 925. Nevertheless, even if did, the Court is persuaded by Defendant's contention that the assertion of personal jurisdiction would be unreasonable in this case.

The reasonableness determination requires consideration of a number of factors: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Dole, 303 F.3d at 1114. No single factor is dispositive. Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1488 (9th Cir. 1993).

1    Defendant does not specifically address each of the above-referenced factors.

2  Instead, Defendant contends generally that the Court's assertion of personal jurisdiction

3  under the facts presented would be unreasonable.  Def.'s Opp'n at 14.  The record shows

4  that Defendant is a single-person operation, with limited distribution, which is operated by

5  its owner out of his home in Massachusetts.  Crone Decl. ¶ 18.  Though Plaintiff was able

6  to obtain deliveries of Defendant's wine to California through on-line retailers, there is no

7  evidence that Defendant intentionally distributed its wine in California or has targeted its

8  residents.  Defendant's contacts with California are virtually nil.  To hale Defendant into a

9  forum where is has virtually no connection would constitute a denial of due process.

10  **IV.    CONCLUSION**

11    For the reasons set forth above,

12    IT IS HEREBY ORDERED THAT Defendant's motion to dismiss for lack of

13  personal jurisdiction is GRANTED.  The Clerk shall close the file and terminate any

14  pending matters.

15    IT IS SO ORDERED.

16  Dated:  May 27, 2011    _____
                                              SAUNDRA BROWN ARMSTRONG
17                                            United States District Judge

18

19

20

21

22

23

24

25

26

27

28